# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN L. GLAZE,

        **Plaintiff,**

  v.                                    Civil Action 2:18-cv-720
                                            Chief Judge Edmund A. Sargus, Jr.
                                            Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff John L. Glaze brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED** and that judgment be entered in favor of Defendant.

**I.    BACKGROUND**

Plaintiff filed his application for SSI on July 21, 2015, alleging that he was disabled beginning June 26, 2010. (Doc. 7, Tr. 298–304). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on August 30, 2017. (Tr. 167–212). On February 14, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 149–66). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 2–8).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on July 23, 2018 (Doc. 1), and the Commissioner filed the administrative record on October 16, 2018 (Doc. 7). Plaintiff filed his Statement of Errors (Doc. 9) on November 30, 2018, Defendant filed an

Opposition (Doc. 10) on January 30, 2019, and Plaintiff filed his Reply (Doc. 14) on February 23, 2019. Thus, this matter is now ripe for consideration.

### A. Hearing Testimony

The ALJ usefully summarized Plaintiff's hearing testimony:

> The claimant testified that he lives by himself and is in the process of selling his condominium, though he has a renter in it at the time of the hearing time. He works a seasonal job with friends at the Haunted Hoochie Halloween house, reporting that he sits and collects 3D glasses from patrons. He enjoys ghost hunting activities and engaged in them with others typically in a small group; however, it has gotten expensive. He uses Facebook and connects with friends online. He described having some issues with paying attention, noting that during a movie, he may drift off and miss a few scenes and with respect to reading, he noted that noting holds his interest. He reported experiencing nightmare[s] and the next day does not want to be around others.

(Tr. 153–54).

### B. Relevant Medical History

Plaintiff's Statement of Errors concerns his use of an assistive device to walk and impairments related to his mental health. The Court summarizes medical evidence pertaining to the same. With respect to Plaintiff's use of an assistive device, the record reflects that:

> [i]n February 2015, while roller skating, the claimant sustained an ankle fracture which required open reduction internal fixation. It is of note that the claimant had the procedure in February and by May was doing very well, with minimal swelling good strength and a healed fracture confirmed by imaging. He was to wean from his walking boot and was released from the orthopedist's care. It is of note that although the claimant received a cane in March 2015 after his surgery, in May 2015, he did not wish to pursue physical therapy and there is no evidence in the record to document the need for an ambulatory aid beyond the natural healing time for this injury. While he was noted to have a pronated gait, he was noted to use no ambulatory aid. Additionally, while the claimant reported some morning ankle stiffness to his podiatrist, there is only evidence of some reduced plantar flexion of his left ankle in August 2015, as well as some diminished protective sensation to the left toes and decreased sensation to the left great toe, which could be a residual effect from his injury or his poorly controlled diabetes mellitus. However, the rest of his sensation examinations were intact and he was noted to have 5/5 strength in the lower extremities and no edema.

(Tr. 156 (internal citations omitted)).

The ALJ also thoroughly summarized evidence related to Plaintiff's mental health:

> Treatment notes from his providers indicate that the claimant at times is depressed or anxious, though he is elsewhere [was noted] to be alert, oriented, attentive and in no acute distress. His psychologist typically described the claimant as maintaining good eye contact, displaying no psychomotor or speech problems, being alert and oriented or presenting without signs of psychosis, thought disorder, or acute distress. While he described a low mood and reported anxiety, his mood was typically within normal limits, he displayed an appropriate range of affect and there was no apparent problems with attention, concentration, or remote or recent memory. While the claimant reports intermittent auditory hallucinations to both his psychiatrist and psychologist at the Veterans Administration Medical Center (VAMC), he is not noted to be responding to internal stimuli and he has acknowledged that he knows it is not real and his judgment and insight were typically noted as adequate or intact. The claimant's psychiatrist typically noted the claimant to have a variable range of mood and affect; though it was typically noted that his speech was clearly articulated and non-pressured, this thought process is linear, logical, and organized, and his cognition was grossly intact. The claimant reported to his treating sources that he enjoyed his seasonal work, engaged with others using online sites such as Meet-up and he was able to attend and participate in a group therapy setting. At times, he noted that he was not invited to celebrations due to other's anticipation of how he might act. It is of significant note that while the claimant's main mental impairment was anxiety; yet, there is no indication by his treating or emergency room doctors that he has not been socially appropriate when seeking treatment or that he has had a panic attack or been anxious while in the waiting or emergency room.

(Tr. 154 (internal citations omitted)).

This account was consistent with the treatment records from the VA:

> With respect to his mental impairments, the record documents intermittent and routine medication management follow-up appointments with his psychiatrist at the VAMC, until 2013, when he established with a new psychiatrist, James W. Cannon, MD, and new psychologist. The records document the claimant has routinely follow up since, as recommended, and had attended group therapy as well in 2014, where he was able to engage and participate. He routinely advises that although at times he feels like being alone, he is able to engage with others, such as friends and others that he meets on the internet. He is able to, an enjoys, his seasonal work and it seems that his primary exacerbations are a result of psychosocial stressors, such as finances.

(Tr. 157 (internal citations omitted)).

3

> The record shows that although the claimant received psychiatric treatment thought the VAMC, he responded well to treatment and his mental status examinations at times show him to be anxious or depressed; yet, he is able to adequately function, as discussed above. Moreover, in May 2016, five months after the expiration of the claimant's date last insured, a VA examiner did not find any evidence to support an increase.

(Tr. 158 (internal citations omitted).

The ALJ also summarized the records related to Plaintiff's global assessment of functioning:

> It is also notable in this case that the claimant's psychiatrist and psychologist have assessed him to have an Axis V global assessment of functioning (GAF) score of 55-63. The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders -Fourth Edition* (DSM-IV) at page 32 defined a score 51 to 60 as representing moderate symptoms or moderate difficulty in social, occupational, or school functioning, with a score of 61 to 70 as representing some mild symptoms or some difficulty in social, occupational, or school functioning. While a GAF score was a subjective, rather than an objective measure, and the diagnosis and assessment of a mental impairment under the criteria found in the DSM-IV were not entitled to great weight in making disability determinations, such scores suggest that even when considering additional items that are not considered in the determination of disability, such as primary support issues or economic issues, the claimant is not as impaired as alleged. For these reasons, the undersigned cannot give much weight to the GAF opinions in the record; however, they have been considered with the entire record.

(Tr. 159 (internal citation omitted)).

**C. The ALJ's Decision**

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015, (Tr. 151), and had not engaged in substantial gainful employment from his alleged onset date of June 26, 2015 through his date last insured. (Tr. 152). The ALJ determined that Plaintiff suffered from the following severe impairments: coronary artery disease, status post episode of congestive heart failure and bypass; hypertension; diabetes mellitus; status post left ankle fracture; sleep apnea; obesity; depressive disorder and anxiety disorder. (Tr. 152). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination,

4

met or medically equaled a listed impairment. (Tr. 153).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent balancing, stooping, kneeling, crouching and crawling, occasional climbing ramps and stairs, but no ladders, ropes or scaffolds and no hazards such as dangerous machinery or unprotected heights. He is able to perform tasks with no fast production pace or strict production demands, occasional interaction with others and only occasional changes in the work setting

(Tr. 154–55).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises two errors to the Court. (Doc. 9). First, he argues that the ALJ's decision should be reversed because the ALJ failed to properly determine whether Plaintiff required the use of an assistive device. (*Id*. at 6–8). Second, he argues that the ALJ improperly evaluated the mental health evidence of record. (*Id*. at 8–11). The Court will address each argument in turn.

5

### A. Use of an Assistive Device

First, Plaintiff argues that the ALJ did not properly address Plaintiff's use of an assistive device to ambulate. (Doc. 9 at 6). According to him, the ALJ "neglected to explain whether or not he believed that [he] required the assistive device based on the evidence of record … [T]he evidence documents that the assistive device is medically necessary." (*Id.*). The ALJ's failure was not harmless, according to Plaintiff, because, "[i]f the ALJ found that [he] required the use of an assistive device, per the vocational expert's testimony, all light work would be precluded," and "[i]f [he] was limited to sedentary work, … he would have been automatically found disabled." (*Id.* at 7).

"To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." SSR 96–9p, 1996 WL 374185, at *7 (1996). Further, the medical documentation must "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.* "The adjudicator must always consider the particular facts of a case." *Id.* "For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." *Id.*

Here, Plaintiff fractured his left ankle on February 20, 2015. (Tr. 561). Dr. Mark Tranovich, an orthopedic surgeon at the Veteran's Administration, concluded Plaintiff would need surgery and prescribed him hydrocodone for the pain. (*Id.*). Following his surgery, on March 27, 2015, Plaintiff attended a follow-up appointment at the VA and reported that he was "doing well with minimal pain." (Tr. 552). Notes from that appointment indicate that Plaintiff "was fitted and

issued a straight cane." (*Id.*). April 27, 2015 progress notes indicated that Plaintiff had "a boot and cane at this point" and still experienced "some pain" with any pressure on his left ankle. (Tr. 547).

The ALJ reviewed this evidence and noted "that although the claimant received a cane in March 2015 after his surgery, in May 2015, he did not wish to pursue physical therapy and there is no evidence in the record to document the need for an ambulatory aid beyond the natural healing time for this injury." (Tr. 156). An August 2015 treatment summary from Plaintiff's podiatrist indicated, that "[w]hile he was noted to have a pronated gait, he was noted to use no ambulatory aid." (*Id.*). The ALJ, therefore, did not include the use of an assistive device in Plaintiff's RFC. (Tr. 154–55).

The ALJ's analysis of Plaintiff's use of the assistive device was not erroneous. Plaintiff has not cited, and the Undersigned has not been able to find, any medical documentation in the record "describing the circumstances for which" Plaintiff's assistive device was "needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96–9p, 1996 WL 374185, at *7. Absent such medical documentation, there was no basis for the ALJ to conclude that the assistive device was medically required. *See id.*; *see also Miller v. Berryhill*, No. 1:18-CV-00140-LLK, 2019 WL 2476743, at *2 (W.D. Ky. June 13, 2019) ("As noted by the ALJ, SSR 96-9p, 1996 WL 374185 requires documentation of both the need and the circumstances of needing an assistive device."); *Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Dr. Fox did not affirm that the walker was medically required and he did not identify any circumstances under which it was required. Thus, SSR 96–9p is not satisfied by Dr. Fox's notation."). Indeed, the record indicates that, during the relevant time period, Plaintiff used a cane only for several months. (*Compare* Tr.

7

552 (treatment notes indicating that Plaintiff was fitted and issued a cane on March 27, 2015) *with* Tr. 849 (treatment notes indicating that Plaintiff was not using any "ambulatory aids" on August 18, 2015)).

Plaintiff's argument to the contrary is unpersuasive. He repeatedly asserts that the ALJ did not address why the ALJ did not include the use of an assistive device in his RFC. (*See* Doc. 9 at 6 ("The ALJ did omit any requirement of an assistive device from the residual functional capacity, but the ALJ never provided any explanation for that omission."); *id.* at 7 ("[T]he ALJ neglected to provide any sort of analysis on why he left out the need for an assistive device in the residual functional capacity. The ALJ could have easily addressed this issue and provided a brief explanation as to why it was being omitted. He failed to do so."); *id.* at 8 ("The ALJ neglected to address whether such a device was necessary, and now it cannot be determined whether the ALJ properly considered whether the device's necessity is supported by the record."); Doc. 14 at 2 ("A major part of Mr. Glaze's argument rests on the fact that the ALJ failed to properly explain why Mr. Glaze's assistive device was not medically necessary.")). But, as demonstrated above, the ALJ did, in fact, provide a reasonable explanation for his decision that the Plaintiff did not require the use of an assistive device. (*See* Tr. 156 ("It is of note that although the claimant received a cane in March 2015 after his surgery, in May 2015, he did not wish to pursue physical therapy and there is no evidence in the record to document the need for an ambulatory aid beyond the natural healing time for this injury. While he was noted to have a pronated gait, he was noted to use no ambulatory aid.")). The ALJ did not err by not including Plaintiff's use of a cane as a limitation as part of his RFC.

Evidence that Plaintiff used an assistive device after his date last insured does not alter this conclusion. "In order to qualify for DIB, a claimant must 'establish the onset of disability prior to

8

the expiration or his [or her] insured status.'" *Kingery v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 598, 602 (S.D. Ohio 2015) (quoting *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984)). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) (citation omitted). "To be relevant to the disability decision, 'post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.'" *Kingery*, 142 F. Supp. 3d at 602 (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)); *see also McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 911 (S.D. Ohio 2016) ("Such evidence can only [be] considered to the extent it illuminates a claimant's health before the expiration of his or her insured status." (citation and quotations omitted)).

Here, Plaintiff's alleged disability onset date was June 26, 2010, (Tr. 149), and his date last insured was December 31, 2015, (Tr. 151–52). As Plaintiff notes, (Doc. 9 at 7), in 2017, he was "fitted and issued a single point adjustable cane," (Tr. 938). But Plaintiff does not cite, and the Court has not been able to identify, evidence in the record demonstrating that Plaintiff's use of a cane in 2017 relates back to his alleged disability during the relevant time period prior to his date last insured. It is, therefore, of little probative value here. *Strong*, 88 F. App'x at 845.

### B. Mental Health

Second, Plaintiff argues that "[t]he ALJ's mental residual functional capacity is not supported by substantial evidence because the ALJ failed to properly consider all of the mental health evidence of record." (Doc. 9 at 8). In his view, "[t]here are multiple reports and mental health evidence that document the presence of significant mental health restrictions that the ALJ failed to properly address" when analyzing his RFC. (*Id.*).

9

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony), and the claimant's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).

Substantial evidence supports the ALJ's RFC analysis here. In developing his RFC analysis, the ALJ reviewed at length Plaintiff's testimony and the medical evidence related to Plaintiff's mental health impairments. (*See* Tr. 154, 155–158, 159–60). While the record demonstrates that Plaintiff experienced anxiety and depression, (Tr. 154), the ALJ found that any limitations resulting from those conditions were mild or moderate in nature, (Tr. 153–54). As he explained:

> With respect to his mental impairments, the record documents intermittent and routine medication management follow-up appointments with his psychiatrist at the VAMC, until 2013, when he established with a new psychiatrist, James W. Cannon, MD, and new psychologist. The records document the claimant has routinely follow up since, as recommended, and had attended group therapy as well in 2014, where he was able to engage and participate. He routinely advises that although at times he feels like being alone, he is able to engage with others, such as friends and others that he meets on the internet. He is able to, an enjoys, his seasonal work and it seems that his primary exacerbations are a result of psychosocial stressors, such as finances.

> These records support that the has had some difficulty with anxiety and depression, but they do not document symptoms or limitations of the severity described in his testimony.

(Tr. 157 (internal citations omitted)). To accommodate Plaintiff's mild or moderate limitations related to his mental impairments, the ALJ limited the Plaintiff "to perform[ing] tasks with no fast production pace or strict production demands, occasional interaction with others and only occasional changes in the work setting[.]" (*Id.*). Because the ALJ has identified "more than a scintilla of evidence" such that "a reasonable mind might accept as adequate to support a conclusion," *Rogers* v, 486 F.3d at 241 (citation and quotations omitted), the Court finds that his RFC analysis is supported by substantial evidence.

Plaintiff's argument to the contrary is unpersuasive. He argues that the ALJ failed to address evidence demonstrating "the presence of significant mental health restrictions," and that his RFC is, therefore, not supported by substantial evidence. (Doc. 9 at 8; *see also id.* at 8–11 (developing the argument)). It is well-established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). Given this well-established precedent, and the ALJ's thorough review of the record as a whole, he cannot be faulted for failing to explicitly address two pieces of evidence favorable to Plaintiff. That is particularly true here because Plaintiff's ultimate argument is to ask the Court to reweigh the evidence and find in his favor. But that is the job of the ALJ, not this Court. *See King*, 742 F.2d at 974. The ALJ did not err as a result.

**IV.     CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 9) be **OVERRULED** and that judgment be entered in favor of Defendant.

**V.     PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   July 12, 2019                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE